Thank you, your honor. Good morning, your honors. May it please the court. I'm Gabrielle Gibson, attorney for the appellants Brodie Faughn, Jeff Sanders, and Robert Stacey, each in his individual capacity. This is an interlocutory appeal of the Eastern District of Arkansas's March 1 order denying Officer Faughn qualified immunity from the claims brought by a police Hess and O'Hara and of its May 25th order denying Chief Sanders and Mayor Stacey qualified immunity from the supervisory liability claims brought by all the appellees. It's important to note that despite what the district court concluded, the material facts are not in dispute. Thus, this court has complete authority to decide the purely legal issues before it. This court should reverse the district court's denial of qualified immunity for the following reasons. First, based on the undisputed photograph that Mr. O'Hara submitted to accurately depict what his license plate looked like at the time of the stop, Officer Faughn could have reasonably suspected that Mr. O'Hara's tag light did not properly illuminate his license plate as to render it clearly legible in accordance with Arkansas law. Second, based on the undisputed fact that Officer Faughn did not personally stop or arrest Ms. Hess, he cannot be held liable for another officer's alleged misconduct. Lastly, there's no evidence in the record of any pattern of unconstitutional acts committed by subordinate officers that Chief Sanders and Mayor Stacey were deliberately indifferent to or tacitly authorized. For those reasons, the appellee's failure to supervise and train claims against Mayor Stacey and Chief Sanders fail as a matter of law. Counselor, can there be a reasonable dispute about the photograph even though both parties agree that the photograph is accurate but could it still be a fact question for someone to determine whether the appearance of the lights and the lighting in the photograph demonstrates the presence of a reasonable suspicion? No, Your Honor. Under United States v Herrera-Gonzalez, it's 474 F 3rd 1105, pinpoint page 1109. A court must consider whether the officer who made the stop could have reasonably suspected that the driver committed the traffic violation, not whether the driver actually committed the violation. So if you're looking at the photograph that's on page 100 of the appendix, that Mr. O'Hara submitted that to support his position that Officer Fawn had absolutely no reasonable suspicion to stop Mr. O'Hara for the tag light being out. And by submitting that photograph, Mr. O'Hara concedes that that photograph accurately depicts what his license plate looked like at that time. And under Arkansas Code Annotated Section 2736-215 subsection c1a, that's a conjunctive statute. So that law requires that the tag light illuminate the license plate with the white light and render that license plate clearly legible from 50 feet away. And we are not disputing the photograph that was submitted by Mr. O'Hara or we don't call into question its admissibility. We're taking that as face value and when applying those facts to the law at hand, no reasonable mind could determine that Mr. Fawn, or that Officer Fawn did not have at least arguable reasonable suspicion to stop Mr. O'Hara on the basis that his tag light did not properly illuminate his license plate as to render it clearly legible. How is, what exactly is in Officer Fawn's view, a arguable reasonable and articulable suspicion? Because reasonable suspicion is a mighty low standard to start with and so I'm trying to figure out if we're now stuck in arguable land, what does that mean? Yes, your honor. So of course with the reasonable suspicion, he just has to have the articulable reasonable suspicion that a crime may be afoot. And with the qualified immunity defense, he has to have at least arguable reasonable suspicion, meaning that he has to have that articulable reasonable suspicion even if he was mistaken about it. So what has he articulated? Your honor, he has articulated that he stopped Mr. O'Hara for his tag light being out. That is the reason for the stop in accordance with Arkansas Code Annotated Section 2736.215. And because that tag light, when looking at the photograph on page 100 of the appendix, when looking at that tag light, it is not in compliance with the law. It doesn't render the license plate clearly legible. And so the appellants would argue that Officer Fawn could have at least had arguable reasonable suspicion to stop Mr. O'Hara on that basis. All right. So the argument is, is that Fawn articulated a reason for the stop. That reason itself is demonstrable from the photograph. And that even if that were not true, that he at least had a reasonable but mistaken belief that the light was not illuminating the license plate such that no juror or no reasonable fact finder could dispute that. Yes, your honor. Yes, your honor. And then after that, it just sort of flows naturally that qualified immunity would apply. Yes, your honor. Because there was no constitutional violation for the unlawful stop. With regard to... When we look at the sort of pretextual sort of arguments, you know, ordinarily we say we don't care what's in their heart. We look at whether or not they have made the reasonable observation, right? Does it make any difference in the sort of underlying allegations here that there's bad blood between the officer, between these two officers? And it's really an attempt to get Officer O'Hara or O'Hare terminated. Does that matter at all? No, your honor. Under Wren v. United States, it's 517 U.S. 806, pinpoint page 812. And Devin Peck v. Alford, it's 543 United States, 146, pinpoint pages 593 through 594. In both opinions, the court makes clear that an officer's subjective motivation does not invalidate an objectively justifiable behavior under the Fourth Amendment. As I read this complaint, it doesn't appear as though the constitutional tort that's alleged is actually motivationally based in violation of the Constitution. Now, maybe I'm reading the complaint wrong, but that's how I'm reading it. At least for this, there's maybe more of an argument with Ms. Hess's claim that she was stopped for sexual harassment purposes, which may in fact, because I think there would be a subset, and I may be wrong, and tell me if I am, that if in fact there's an unconstitutional basis for the stop based on race, gender, you know, those sorts of things that have been recognized, that it may be that doesn't appear to be present in any way here in the Fon argument. Is that true? Yes, Your Honor. It is not present in Officer Fon's argument with regard to Mr. O'Hara's unlawful stop claim. And then with regard to Ms. Hess's unlawful stop and arrest claims, those are the claims that she has brought, that the district court found that she has brought against Officer Fon. And so we are looking at just the unlawful stop and arrest claims there. And it is undisputed in the record below that it's Officer Mears, not Officer Fon, that performed that traffic stop on Apley Hess. And it's also undisputed that it was Officer Mears, not Officer Fon, that arrested Ms. Hess for DWI drugs and maintaining an improper brake light. It's also undisputed that Officer Fon merely assisted in administering additional sobriety tests. There's nothing in the record, minus pure speculation, that Officer Fon in any way conspired or worked with Officer Mears or had any sort of ulterior motive in responding to Officer Mears' request for his assistance in performing those additional field sobriety tests. And as this court is aware, government officials can only be held personally liable for their own misconduct. And qualified immunity requires an individualized analysis of each officer's alleged conduct. So when you look at Officer Fon's conduct that is in the record, Ms. Hess did not bring any claim against Officer Fon for his own conduct. He did not stop or arrest Ms. Hess, thus he can't be held personally liable for unlawfully stopping or unlawfully arresting Ms. Hess. Counsel, Ms. Gibson, did the district court find any disputed fact issues with respect to the Hess stop? Your Honor, the district court on page 224 of the appendix states that Officer Mears, who is not a defendant, initiated the traffic stop and arrested Hess. So, I would say no, Your Honor. There isn't a disputed fact as to whether Officer Fon stopped Ms. Hess because it's clear in the record that he didn't. It's also clear in the record that Officer Fon did not arrest Ms. Hess. So, Your Honor. Any fact dispute on any issue in this case? No, Your Honor. There's no factual dispute on any issue with regard to Mr. O'Hara's unlawful stop claim, Ms. Hess's unlawful stop and arrest claims, and then all of the appellee's claims against Chief Sanders and Mayor Stacey for the supervisory liability claims. If you look at the opinion below, it does seem to look like under the, I don't, you know, we don't have the appendix right in front of us, but it looks at, I think it's page 12 of the opinion, under the illegal stop of Hess, it does seem that the magistrate judge made some reference to Fon expressing a history of expressing inappropriate personal interest in her, which if in fact the underlying tort alleged was a constitutional claim that the arrest was that the magistrate judge thought there was fact question there. And I get what you're saying, that's not the constitutional tort alleged, so it doesn't matter, but if that were, is that a sufficient finding to allow the case to go forward? I don't believe so, Your Honor, because in the record, there has been no evidence produced of any sort of, it's only been speculation on Ms. Hess' part that Officer Fon patted Ms. Hess on the buttocks, Officer Fon conspired with Mayors to stop Ms. Hess, there's just no evidence in the record to support those Mayor allegations, and as this court knows, Mayor allegations or speculation, it's not enough. Unsubstantiated suspicions will not suffice in order for the plaintiffs to meet their burden of providing proof with proof, and that's in Boulderston v. City of Wentzville. And then I would like to note, well actually, I am into my rebuttal time, so if I may, I'd like to reserve the rest of my time for rebuttal. Thank you, Ms. Gibson. Thank you. Mr. Easley? Mr. Easley, you're muted. Well, we recognize that, we believe that the lower court ruled correctly. We think there's a pattern of heavy-handed, abusive, and unconstitutional treatment here. The key is whether appellants acted in good faith. We don't think they did. There's ample evidence that these officers were bad faith, and for ulterior purposes. What is that evidence, counsel? But what's in, show us, cite us to the record of the, that indicates there is factual dispute about the legitimacy of the stop. In which stop are you, to your referring, your honor? Well, let's start with the first one, and then go to number two. All right, now the, are we talking Dan Harrison, because that's the one I have first that was argued in brief. The first one was O'Hara against Fawn. Good enough. Well, we did have a discussion, your honor, about O'Hara and the photograph. I do believe that the court was within its rights, even as counsel indicated, the light being dim. There is a the jurors would be entitled to their own opinions on that, and we think it's protectural. So, I think it squarely presents a factual issue as to whether this officer was, had made a bona fide stop, or whether it was for, not only for ulterior purposes, but it was wrongly done in terms of constitutional requirements. You want me to discuss any other stop, your honor? Well, the other stop that we've discussed is the S stop, and what I'm getting at with respect to both is what indicates, and with the, I think I follow your answer is to the light in the O'Hara case, is you're saying the photograph is not sufficient to, for someone to look at and determine that no reasonable fact finder could conclude that a reasonable officer might have thought that the light wasn't illuminating to the degree that the law requires. Well, I think that different opinions could be drawn from what these people see. That's the best way I can express it. It appears, to me at least, that the plate is visible. People could disagree, and therein lies the problem with your honor. Circumstantial evidence precedes the, this plaintiff having gone in for lunch and seeing these two officers sitting together. The other officer, Officer Mears, leaving and immediately following him, speeding up to the stop and taking over, the investigation. And at that point, slapping her or touching her on the buttocks after having, as we've already seen, expressed the fact that he thinks she's looking good, and he's looking her up and down in the gentleman's office. So we have, we do have proof here. Which office are you talking about? Mears, actually Fawn. Fawn having done the impermissible conduct after the stop, after Mears had made the stop. Now, we have not sued Mears, but we do believe that we have circumstantial evidence that there was a conversation that took because Fawn followed this up so quickly and took over aggressively, charged her with DUI, and never could produce the evidence. And he continued to continue this case in the district court. Which officer filed the charge? I believe that the officer, I believe, was Mears. But it was clearly, it was clear, and it was according to Ms. Hess's testimony, that thereafter, Fawn was in charge of the so-called evidence, which never made its appearance. Well, one thing about the evidence that is in the record is the field sobriety test appeared to demonstrate some impairment. You know, I mean, I sat as a trial judge in state courts and district courts for 20 years of my life, and those, you know, did she perform those tests relatively poorly by any analysis? I mean, she quit counting when she was supposed to count. She stepped down when she's supposed to, when not supposed to step down. She stepped off the line a couple of times. She was unsteady. She began early. She didn't follow directions. I mean, having looked at a lot of field sobriety tests, I'll just tell you that stone-cold sober people don't usually have those particular problems. Now, so there's some evidence here from which a reasonable officer could effectuate the arrest, right? And as I read your pleadings, that's really the heart of the matter, because it seems to me that your claim is that there were unconstitutional arrests here that were pretextual in nature, but you never alleged that I can see, and maybe I'm wrong, and if I am, I'd like to hear where I've missed it in the You've got the fact question that you've raised as opposed to, you know, in the O'Hara case, but in the Hess case, it seems to me the heart of your claim is there's some other unconstitutional activity going on that constitutes a constitutional port. Well, we have, we have, I'm sorry, Judge. Go ahead. We have factual proof, and I think it's in the record, that the turn light issue was false, and there's a fact issue for the jury. She had had her tail light checked out and repaired and replaced the day before, and so the question of the stop is, again, right back in the lap of a jury. That's the best I can tell you, Judge. Okay, very good. Thank you. I'm sorry? I just said thank you. Oh, sure. Let's see. The Miller matter we've discussed, the Harrison matter, we were ruled against on the stop on that issue, but we have there an actual theft by the officer from the lady of opiates, and the search is also at issue, having been in public, and with the appellant saying they had proof by a body cam that this happened, and there's absolutely no such proof, and so we do have certainly he said, she said in that instance. I think that probably does it for Ms. Harrison, and we've talked about Harrison Miller. The Shane Willard case is one of excessive force, and the judge denied their motion on excessive force. I think correctly so, because there is actual evidence in the case and photographic proof of a terrible lick across the head that opened his scalp up, and he had to be taken to the emergency room. Let's see. I think the Miller case we have not discussed. I've not been questioned about that, but would there be any question from your honors on the Alvin Miller issue, which we say is but also other officers who are alleged to have heard Fawn's version versus Mr. Miller's version. So with that, I did not, I think previous to the hearing, I did not reserve any time, but I think I'll reserve the rest of my time at this point, unless there are questions. This will be your own. There's nothing to reserve. You use it or lose it. This is your own. Well, then I'll conclude my argument, your honor. Thank you. All right. Thank you, Mr. Easley. Yes, sir. Ms. Gibson, your rebuttal. Yes, your honor. I would like to point out that Ms., in the unlawful stop and arrest claims from Ms. Hess, it is undisputed that Officer Fawn did not immediately show up to the stop of Officer Mears with Ms. Hess. It was approximately 12 minutes after Officer Mears stopped Ms. Hess that Officer Fawn responded to Officer Mears' request for assistance. And that is on page 59 of the appendix is the body camera footage, and I believe it starts on 12 minutes and 21 seconds is when Officer Fawn arrives. Also, your honors, the claims brought by Ms. Harrison, Mr. Willard, and Mr. Miller are not an issue in this appeal. We did recognize that there are questions of fact in those cases, and so those issues are not before this appeal, this court. Yeah. As I read your briefing and your notice, you are only claiming that the O'Hara stop and the Hess stop are not supportable, that the district court's ruling is not supportable, and that responding at Superior is not available for Chief Sanders and the mayor. And those are the only issues before the court, right? Yes, your honor. The unlawful stop and arrest of Ms. Hess, but yes. Right, right. Yes, your honor, that is correct. So for all of these reasons that I've mentioned herein and in our briefing, appellants are asking that this court reverse the district court's orders denying Officer Fawn, Chief Sanders, and Mayor Stacey qualified immunity as a matter of law. Thank you. Thank you. Thank you, Ms. Gibson. Thank you also, Mr. Easley. The court appreciates both counsel's participation and argument this morning. We thank you for supplying and supplementing the record with your comments to us. We'll continue to review the materials that have been filed and render decision in due course. Thank you, counsel. We certainly appreciate that, George. Thank you, sir.